IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW GUSTIN | : CIVIL ACTION |
| | : |
| v. | : NO.  23-2123 |
| | : |
| ROCK GATE CAPITAL LLC | : |
| d/b/a 160 DRIVING ACADEMY | : |

## MEMORANDUM

SCHMEHL, J.   /s/ JLS                                    DECEMBER  9, 2024

## INTRODUCTION

Plaintiff brought this action under 42 U.S.C. § 1981, claiming that Defendant Rock Gate Capital LLC d/b/a 160 Driving Academy ("160 Driving") terminated him from his position as a Regional Lead Instructor in retaliation for reporting instances of alleged race and sex discrimination by other instructors and students to his superiors. Presently before the Court is 160 Driving's motion for summary judgment. For the reasons that follow, the motion is granted.

## STANDARD OF REVIEW

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the nonmoving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is

"material" if it might affect the outcome of the case under governing law. Id. (citing *Anderson*, 477 U.S. at 248).

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. See *Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**FACTS**

The parties have stipulated to the following facts ("SOF"):

1. Plaintiff is white.

2. Plaintiff was an "at-will" employee at all times during his employment.

3. The terms and conditions of Plaintiff's employment were subject to the unilateral discretion of 160 Driving.

4. 160 Driving has an Employee Handbook.

5. Plaintiff began employment with 160 Driving on August 9, 2021 as a [Commercial Driver's License] "CDL" Instructor in the Lebanon, Pennsylvania yard.

6. Plaintiff was subsequently promoted to Yard Lead.

7. Plaintiff was then promoted to Regional Lead Instructor on April 6, 2022. When Plaintiff was promoted to Regional Lead Instructor, he reported to Ashlie Smothers, Regional Manager ("Smothers").

8. In his position as Regional Lead Instructor, Plaintiff oversaw approximately eight (8) regional CDL school locations including at least 25 CDL instructors across the region.

9. Plaintiff considered himself the "boss" of the CDL Instructors in his region.

10. As a Regional Lead Instructor, Plaintiff had increased management responsibilities over a larger region of 160 Driving.

11. Material aspects of Plaintiff's job duties as Regional Lead Instructor relevant to this dispute are outlined in a document titled "160 Driving Academy Regional Instructor Leader Role." [ECF 28-3.]  Specifically, Plaintiff was responsible for:

    i.  Managing multiple 160 Driving training locations;

    ii.   Ensuring compliance with State, Federal and Local governmental agencies; c.

    iii.  Problem-solving difficult student issues;

    iv.  d. Managing operations, compliance and responsibilities of 160 Driving yard locations; and

    v.   e. Build long lasting professional relationships with the entire team.

12. Plaintiff's responsibilities included ensuring that employees provided safe and thorough training to students throughout the course.

13. Plaintiff worked closely with students when complaints or issues arose related to their training or treatment by 160 Driving employees.

14. When student complaints arose, instructors often directed them to Plaintiff.

15. Sometimes students contacted Plaintiff directly about their complaints.

16. Plaintiff also fielded and escalated complaints in his role as Yard Lead, prior to his promotion to Regional Lead Instructor.

17. While there was no formal Company procedure for escalation of student complaints, Plaintiff understood, in his role as Regional Lead Instructor, he was responsible for ensuring both employee and student concerns were handled appropriately or escalated to the proper individuals.

18. Plaintiff sometimes assisted with investigations into violations of Company policies, such as those involving allegations of discrimination, harassment, and other alleged misconduct.

19. Should an investigation into potential wrongdoing occur, Plaintiff would sometimes work with 160 Driving leadership and Human Resources to obtain witness statements.

20. Regional Lead Instructors are expected to maintain a professional environment and remain courteous at all times.

21. After his promotion to Regional Lead Instructor, Plaintiff reported alleged incidents of inappropriate behavior that potentially violated Company policies and procedures.

22. Plaintiff was expected to escalate complaints to Smothers and/or Human Resources.

23. Plaintiff escalated several complaints made by employees and students.

24. On August 29, 2022, Plaintiff was contacted by three students from the Bethlehem, Pennsylvania yard, complaining about a lack of training that occurred on their first day of class.

25. These initial complaints did not involve allegations of racial animus or discrimination.

26. Plaintiff contacted the Lead Instructor for the Bethlehem, Pennsylvania yard, Lauren Kahmar ("Kahmar"), who held a meeting with the yard's staff and the three students on the same day.

27. This meeting triggered more student complaints.

28. Toward the end of the meeting, CDL Instructor, Judex Gonzalez ("Gonzalez"), had an argument with a student during which he used profanities and threatened a student.

29. The student involved submitted a detailed complaint to Plaintiff.

30. In turn, Plaintiff spoke with, and forwarded the complaint to Smothers.

31. Smothers forwarded the complaint to Human Resources, indicating her desire to terminate Gonzalez's employment for his unprofessional conduct.

32. Neither Smothers nor Human Resources instructed Plaintiff to gather additional witness statements.

33. Plaintiff spent the next several days observing the Bethlehem yard's training and management to further evaluate the students' complaints.

34. As part of his assessment, Plaintiff obtained several statements, which were submitted to Human Resources.

35. None of the student complaints prior to August 31, 2022 contained any allegations of racial animus or discrimination exhibited by Kahmar or any other 160 Driving employee at the Bethlehem, Pennsylvania yard.

36. On the afternoon of August 31, 2022, another incident occurred.

37. According to student witness statements, during the late afternoon on August 31, 2022, Kahmar got into an argument where she used profane language and verbally reprimanded several Hispanic students for speaking Spanish and not English.

38. 160 Driving did not have a written policy prohibiting the use of Spanish during students' free time.

39. The students promptly notified Plaintiff of Kahmar's statements.

40. Plaintiff was not physically present and did not personally experience Kahmar's statements about not speaking Spanish.

41. Plaintiff reported these students' allegations to Nicki Kleifield of HR ("Kleifield").

42. This was the first time the students at the Bethlehem, Pennsylvania yard complained to Plaintiff about Kahmar's statements about only using English while on 160 Driving property.

43. Human Resources requested that Plaintiff obtain witness statements from 160 Driving students and instructors regarding Kahmar's statements.

44. Plaintiff gathered student and instructor statements and submitted them to Human Resources.

45. On September 1, 2022, Plaintiff called a meeting of the Bethlehem Yard instructors, including Kahmar, Gonzalez, Randi Dise ("Dise"), and Robert Schmoyer ("Schmoyer"), to discuss the ongoing professionalism issues in the workplace

46. Following the meeting, Kahmar complained about Plaintiff's behavior to Smothers and Human Resources.

47. After the meeting, Plaintiff called Smothers.

48. On the call, Plaintiff admitted that he raised his voice at the instructors.

49. After receiving Kahmar's complaint and discussing with Smothers, 160 Driving's Head of Schools, Madeline Crider ("Crider"), called for Plaintiff's termination by email.

50. Kahmar was terminated on September 6, and Gonzalez was terminated on September 8, 2022, for their unprofessional and inappropriate behavior towards 160 Driving students.

51. Plaintiff was terminated on September 7, 2022.

[ECF 27.]

In addition, the Court notes the following undisputed material facts:

1.  Plaintiff testified that he understood that his employment as Regional Lead Instructor was at-will. [ECF 28-8, p.14.]

2.  Plaintiff testified that the position of Regional Lead Instructor is a management position and, therefore, he was a manager for 160 Driving. [*Id.,* p.16.]

3.  The full job description for the position of Regional Lead Instructor included the following:

    - Manage multiple 160 training locations

    - Manage and oversee 160 Driving Academy curriculum

    - Hire and train additional instructors

    - Full responsibility to hire / fire instructor team at each location

    - Start-up new locations per 160 planning

    - Deploy 160 Tablet-based Learning Management Tools

    - Manage all equipment maintenance and outsourced service providers

    - Ensure compliance with State, Federal and Local governmental agencies

    - Problem-solve difficult student issues in collaboration with Regional Branch Leader

    - Participate weekly with 160 Leadership Team

    - Serve as advocate to 160 student from day of enrollment thru day of graduation

- Manage all day-to-day operations, compliance and responsibilities of 160 Yard locations

- Build long lasting professional relationships with entire team

- This is a full-time opportunity with competitive base-pay, benefits and significant performance-based bonus opportunities  [ECF 28-3, p.3.]

4.  Plaintiff acknowledged these job requirements. [ECF 28-8, pp. 20-22;25-27.]

5.  Plaintiff testified that he was not aware of any formal written employment policy by 160 Driving. [ECF 28-8, p. 31.]

6.  Plaintiff testified that he did not receive a copy of 160 Driving's Employee Handbook. [*Id.*]

7.  The Employee Handbook states: "160 Driving Academy requires all employees to treat all applicants and students equally and therefore prohibits discrimination of any type toward applicants and students. Treat all with dignity and respect. Any inappropriate conduct, such as unfair treatment or favoritism, failure to provide training, ethnic, sexist, religious or racial slurs or other derogatory or objectionable conduct toward applicants or students based on their membership in any Protected Category will be cause discipline up to and including termination." [ECF 28-16, p. 6.]

8.  Plaintiff testified that he had never seen this written policy. [ECF 28-8, p. 33.] He testified that he generally understood this policy provision to be 160 Driving's expectation of its employees in dealing with applicants and students and that as Regional Lead Instructor he was responsible for upholding that standard and "being a good human being, professional and civil with people." [*Id.,* p. 31.]

9. The Employee Handbook states: "If you believe you have been subject to harassment, discrimination, abusive conduct of any kind, retaliation or any conduct that violates this policy, you should immediately report the facts of the conduct, verbally or in writing, to your manager, Human Resources or any member of management. Managers are to report any claims of misconduct to Human Resources." [ECF 28-16, p. 7.]

10. Plaintiff testified that although he had never seen this policy he believed "that's what you do." [ECF 28-8., p. 34.] He testified that he did report complaints of discrimination and harassment. [*Id.*]

11. The Employee Handbook states: "Your personal image has a large impact on the success of our business. As an employee, your behavior can directly affect a student's learning experience; therefore, it is important you be professional and courteous at all times. Your behavior and demeanor must always be in support of our mission. Always treat your fellow employees, students and vendors with respect, courtesy and tact. You should always avoid types of conduct that can be personally offens[ive] to others. Your employment agreement outlines guidelines for your employment at the 160 Driving Academy. Behaviors that can lead to disciplinary action, up to and including termination, include but are not limited to:

- Failure to perform your duties on a persistent basis

- Failure to adhere to rules and guidelines set forth in this Handbook

- Disregarding safety rules and practices.

- Behavior of any type which negatively reflects upon our Company

- Failure to adhere to any 160 Driving Academy policies, or any federal, state or local law, statute or regulation. [ECF 28-16, p. 9.]

12. Plaintiff testified this personal behavior provision reflects his understanding of 160 Driving's expectations. [ECF 28-8, p. 35.]

13. Plaintiff testified that he understood 160 Driving maintained certain standards for its employees in dealing with students and that as Regional Lead Instructor he was responsible for upholding those standards. [*Id*., p. 33.]

14. Plaintiff testified that he knew that he had to report suspected violations of laws and regulations, including instances of discrimination and harassment. [*Id.,* p. 36.] He testified that part of his compliance responsibilities was to make sure 160 Driving remained complaint with anti-discrimination laws. [*Id*.]

15. Plaintiff testified that his role would sometimes include assisting the company with investigations into discrimination and harassment. [ECF 28-8, p. 27.] This task included getting statements from the parties involved. His expectation was that he would escalate these statements by email to Smothers, or to Kleifield and just follow the chain of command. [ECF 28-8, pp. 28-30.]

16. Smothers testified that it is the duty of a Regional Lead Instructor to elevate a claim of workplace harassment or discrimination by an employee to HR and by a student to her. [ECF 28-9, pp. 8-9.]

17. Plaintiff testified that in May of 2022, after he was notified by two instructors of 160 Driving about a sexual assault by another 160 Driving instructor of a female student.  Plaintiff took witness statements and submitted the statements to HR and notified Smothers. [ECF 28-8, p. 38.]

18. Plaintiff testified that in July of 2022, he was notified by another instructor, Dise, of two complaints of sexual harassment, one of which involved sexually explicit text messages. [*Id*., pp. 40-44.] Dise sent the text messages to Plaintiff. Plaintiff then forwarded the messages to Smothers. [*Id*.] According to Plaintiff, he was advised by Smothers not to report these complaints to HR. [*Id*.]

19. As part of his investigation of the Gonzalez incident on August 29, 2022 involving threatening a student, Plaintiff recommended that 160 Driving adopt a zero-tolerance policy and terminate Gonzalez. [*Id.* at 74.]

20. Plaintiff testified that in August of 2022, he was notified by another instructor, Michael Hanlon, that another instructor had made racist jokes to his students. [*Id.,* pp. 48-50.] Plaintiff testified that he took statements from both instructors and escalated them to Smothers and HR. [*Id*.] He also advised Smothers and HR that the offending instructor should be dismissed. [*Id*.]

21. On August 31, 2022, Plaintiff received an email from a student, Yancy Dominguez, that Kahmar, the yard lead, told Hispanic students to speak in English when they are in the yard. [*Id.*, pp. 56-60.] He immediately forwarded Dominguez's email to Kleifield. [*Id*.] Plaintiff also took witness statements from Dominguez and other students who had phoned Plaintiff about the incident. [*Id*.]

22. On September 1, 2022, Plaintiff had a meeting with Dise, Smoyer, Gonzalez and Kahmar. According to Plaintiff, Dise, and Kahmar became insubordinate at the meeting. [*Id.*, p. 61.]

23. After the meeting, Plaintiff phoned Smothers to inform her about the insubordination. [*Id*., pp. 61-62.] According to Smothers, Plaintiff "admitted to acting unprofessional on the yard. He became irate with the instructor staff team because he was upset with how they were acting and how they were behaving and he became unprofessional, stated that he said choice words to them and that he did not act his best self." [ECF 28-9, p.19.] Upon conclusion of the telephone conversation with Plaintiff, Smothers "escalated the matter to HR." [*Id.,* p. 20.]

24. On the evening of September 1, 2022, Kahmar sent an email to Kleifield and Kevin Coen, the head of HR, in which she stated that during the meeting that morning, Plaintiff "became enraged, started screaming and cursing at Randi Dise, Judex Gonzalez, Bob Schmoyer and myself." Kahmar further wrote that Plaintiff asked "if we liked our paychecks, because we are probably not going to get a lot more. I told him he needed to calm down if he wanted to discuss the issues he wanted to, he then proceeded to punch the table very hard that Randi was sitting at and screamed and cursed again." Kahmar wrote that Plaintiff "verbally harassed us, threatened retaliation against us and made false allegations about our communications with students.  The way [Plaintiff] handled this was very unprofessional. I felt attacked and blindsided. He was verbally abusive and threatening. I was very uncomfortable." [ECF 28-7, pp. 3-4.]

25. In a declaration dated April 9, 2024, Dise confirmed Kamar's statement of September 1, 2022. [ECF 28-12.]

26. In a declaration dated April 9, 2024, Schmoyer confirmed Kamar's statement of September 1, 2022. [ECF 28-13.]

27. Plaintiff denied that he became unprofessional at the meeting. [ECF 28-8, p. 62.]

28. Plaintiff testified that he raised his voice in a stern matter. [*Id*.]

29. He denied cursing at the instructors, slamming a table and ever stating that he hoped the instructors liked their paychecks because they were not going to receive any more paychecks. *Id*. He also denied following an instructor after the meeting. [*Id*.]

30. Plaintiff testified that he was not aware of any evidence that would indicate that he was terminated because he escalated reports of discrimination to Smothers and HR. Rather, he testified that it was only the temporal proximity of reporting these incidents to his termination which led him to believe he was the victim of retaliation. [*Id.,* pp. 51-52.]

31. Plaintiff speculated that 160 Driving viewed him as an issue for reporting the claims of harassment and discrimination to Smothers and HR when all 160 Driving really wanted to do was to "sweep the claims under the rug" and terminate him. [*Id.,* pp. 53-54.]

32. The Employee Handbook states:

> The Company will not retaliate against you for filing a good faith complaint or participating as a witness in an investigation and will not tolerate or permit retaliation by management, employees, or co-workers. Any report of retaliation by the one accused of harassment or discrimination, or by co-workers, supervisors, or managers, will also be promptly and thoroughly investigated in accordance with the Company's investigation procedures outlined above. If a complaint of retaliation is substantiated, appropriate disciplinary action, up to and including termination, will be taken.

[ ECF 28-16, p. 8.]

## DISCUSSION

To maintain a claim for retaliation under 42 U.S.C. §1981, Plaintiff must first establish a *prima facie* case. To do so, Plaintiff must establish that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey,* 604 F.3d 788, 798 (3d Cir. 2010).[1]

160 Driving contends that Plaintiff failed to show that he engaged in "protected activity."[2] The anti-retaliation provision of Title VII protects an employee who participates in certain Title VII proceedings (the "participation clause") as well as those who oppose discrimination under Title VII (the "opposition clause"). *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Under either type of activity, Plaintiff "must hold an objectively reasonable belief, in good faith, that the activity [he opposed] is unlawful under Title VII." *Id*. While general complaints of unfair treatment are insufficient to establish a protected activity, "informal protests of discriminatory employment practices, including making complaints to management … and expressing support for co-workers who have filed formal charges" are protected activities. *Curay-Cramer v. Ursuline Academy of Wilmington, De.*, Inc., 450 F. 3d 130, 135 (3d Cir. 2006).

[1] The elements of a Section 1981 retaliation claim are identical to those in a retaliation claim under Title VII. *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999).

[2] Though his Complaint only describes one "protected activity," Plaintiff testified that he allegedly engaged in several protected activities spanning the spring and summer of 2022 as detailed, *supra*. In his Response to the Motion for Summary Judgment, however, Plaintiff claims the "'final straw' that resulted in his termination were "the incidents of August 31 and September 1 in which he elevated these complaints of race discrimination by students of [160 Driving] against Ms. Kahmar and [Plaintiff's] subsequent participation in an investigation into these claims of race discrimination**."** ECF 30, p. 25.

However, "where an employee's job duty involves reporting suspected discrimination to the company, it is not protected activity." *Cameron-Satchell v. CDHA Mgmt. LLC*, No. CV 21-576, 2021 WL 4902342, at *14-15 (E.D. Pa. Oct. 21, 2021). In such a case, in order for protected activity to occur, the employee must "step outside the role" or "make clear to the employer that the employee was taking a position adverse to the employer"; otherwise, "nearly every activity in the normal course of a manager's job would potentially be protected activity...." *Id*. "'But if an employee—even one whose job responsibilities involve investigating complaints of discrimination—actively 'support[s]' other employees in asserting their Title VII rights or personally 'complain[s]' or is 'critical' about the 'discriminatory employment practices' of [his] employer, that employee has engaged in a protected activity under [Title VII's] opposition clause.'" *Id*. quoting *Sumner v. United States Postal Serv*., 899 F.2d 203, 209 (2d Cir.1990).

Here, Plaintiff testified that he was aware that, as a manager for 160 Driving, he had to report suspected violations of laws and regulations, including instances of discrimination and harassment to his immediate boss, Smothers and/or to HR. [ECF 27, SOF 18; ECF 28-8, pp. 25, 27, 34, 36.] He testified that part of his compliance responsibilities was to make sure 160 Driving remained complaint with anti-discrimination laws. [*Id*. pp. 26, 34, 36.] Plaintiff testified that this responsibility included getting statements from the parties involved. [ECF 27, SOF 19; *Id.,* pp. 27-30.] Plaintiff testified that his expectation was that he would escalate these statements by email to Smothers, or to Kleifield and just follow the chain of command. [*Id;* ECF 27, SOF 22.] Smothers confirmed that it is the duty of a Regional Lead Instructor to elevate a claim of workplace

harassment or discrimination by an employee to HR and by a student to her. [ECF 28-9, pp. 8-9.]

Plaintiff testified that he submitted all the complaints he received to upper management on behalf of someone else. [ECF 28-8, pp. 37, 38, 39, 40, 48, 50, 56, 57, 61.] Plaintiff did not initiate any of the complaints. Rather, all the complaints were brought to him by either other instructors or students. He then merely exercised one of his job responsibilities as Regional Lead Instructor in forwarding the complaints to either Smothers or HR. He did not convey any complaints to Smothers or HR as a matter of personal advocation on behalf of an employee or student or ever take a position that was adverse to 160 Driving. There is no evidence in the record that he ever "stepped above and beyond his mere duties as a Regional Lead and advocated for the students of Defendant to be free of an instructor [Kahmar] who is imposing racially discriminatory practices against them."[3] And in the one instance where Plaintiff made a recommendation to HR, instead of advocating on that individual's behalf, he recommended that 160 Driving adopt a zero tolerance policy and that the offending individual be terminated. [*Id.* at 74.] There is simply no evidence in the record that Plaintiff ever "step[ped] outside the role" or "ma[d]e clear to the employer that [he] was taking a position adverse to [160 Driving]," when handling any of the student or employee complaints. *Cameron-Satchell,* 2021 WL 4902342, at *14-15. Because Plaintiff conveyed others' complaints of discrimination to Smothers and HR as part of his job duties as Regional Lead Instructor and did not actively support other employees or students in asserting their rights against discrimination, he did not engage in any protected activities as a matter of law. Indeed, even Plaintiff himself

---

[3] [ECF 30, p. 23.]

testified that he was not aware of any circumstances that would indicate that he was terminated in retaliation for escalating reports of discrimination to Smothers and HR. [ECF 28-8, pp. 51-52.] Rather, he testified that it was only the temporal proximity of reporting these incidents to his termination which led him to believe he was the victim of retaliation. [*Id*.]

## **CONCLUSION**

Since Plaintiff has not satisfied the first element for a *prima face* case of retaliation under 42 U.S.C. §1981, summary judgment is entered in favor of Defendant and against Plaintiff.